LEE, TRAN & LIANG LLP
Enoch H. Liang (CA Bar No. 212324)
  email: enoch.liang@ltlattorneys.com
Eugene L. Hahm (CA Bar No. 167596)
  email: eugene.hahm@ltlattorneys.com
Edward S. Quon (CA Bar No. 214197)
  email: edward.quon@ltlw.com
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Telephone: (650) 422-2130
Facsimile: (650) 241-2142

Attorneys for Defendants and Counterclaim Plaintiffs
Advanced Cleanup Technologies, Inc. and
Advanced Environmental  Group, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CLEAN AIR ENGINEERING-MARITIME, INC., a California corporation,<br><br>        Plaintiff and<br>        Counter-defendant.<br><br>v.<br><br>ADVANCED CLEANUP TECHNOLOGIES, INC., and ADVANCED ENVIORNMENTAL GROUP, LLC [sic], a California corporation,<br><br>        Defendants and<br>        Counterclaimants. | Case No. 2:12-cv-08669-JAK-VBK<br><br>**DEFENDANT ADVANCED CLEANUP TECHNOLOGIES, INC.'S OPPOSITION TO CLEAN AIR ENGINEERING-MARITIME, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**PUBLIC REDACTED VERSION**<br><br>Date:     June 23, 2014<br>Time:    8:30 a.m.<br>Place:   Roybal 750 – 7th Floor<br>Judge:  John A. Kronstadt |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

I.     INTRODUCTION. ......................................................................1

II.    RELEVANT BACKGROUND FACTS............................................1

   A. The '710 Patent. ................................................................1

   B. The '631 Patent. ...............................................................3

   C. CAEMI's Accused Products. ..............................................3

III.   APPLICABLE LEGAL STANDARD. ...........................................5

   A. Infringement. ....................................................................5

   B. Anticipation. .....................................................................6

IV.   CAEMI CANNOT DEMONSTRATE NON-INFRINGEMENT OF THE '710 PATENT AS A MATTER OF LAW. ...................................................6

   A. CAEMI's Straight Hose Bonnet and Ultra Safe Connect Bonnet Both Infringe Claim 19. .............................................................7

      1. This Court Previously Rejected CAEMI's Arguments of Non-Infringement and Should Adopt the Same Reasoning on this Motion. 7

      2. CAEMI Performs the Step of "Securing a Bonnet Over a Stack.".......8

   B. There are Material Disputed Facts Regarding CAEMI's Infringement of Claim 1. ...................................................................10

      1. Both the Straight Hose Bonnet and Ultra Safe Connect Bonnet are Radially Contractable and Sufficiently Grasp the Ship Stack. ............11

      2. The Safe Connect Bonnet Infringed Claim 1 during Tests 2 and 3....13

V.    THERE ARE GENUINE DISPUTES OF MATERIAL FACT REGARDING CAEMI'S INFRINGEMENT OF THE '631 PATENT. .........................13

VI.   TEBOUL DOES NOT ANTICIPATE CLAIM 19 OF THE '710 PATENT..16

VII. CONCLUSION.........................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, (Fed. Cir. 2006) ..............20, 22

*Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C,* 482 F.3d 1347, (Fed. Cir. 2007)......................................................................................6

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, (Fed. Cir. 2004) ..........................................................................................................5

*In re Baird,* 16 F.3d 380, (Fed.Cir.1994) ...............................................................20

*In re Paulsen,* 30 F.3d 1475 (Fed. Cir. 1994)..........................................................19

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, (Fed. Cir. 1999) ...................................................................................................................21

*Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, (Fed. Cir. 1992) ...............................................................................................6

*National Presto Indus. v. W. Bend Co.*, 76 F.3d 1185, (Fed. Cir. 1996)...................6

*Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, (Fed. Cir. 1994)................21

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,745 F.2d 11, (Fed. Cir. 1984) .....................................................................................................8, 13, 16

*Phillips v. AWH Corp.,* 415 F.3d 1303, (Fed. Cir. 2005) ........................................20

*Quality Edge, Inc. v. Rollex Corp.*, 2013 WL 3283639 (W.D. Mich. 2013) ............6

*Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, (Fed.Cir.1989)...........................19

*Straussler v. United States*, 339 F.2d 670, (1964)...................................................16

*Xerox Corp. v. 3COM Corp.,* 458 F.3d 1310, (Fed. Cir. 2006) ...............................6

## STATUTES

35 U.S.C. § 102.........................................................................................................16

## RULES

Fed. R. Civ. P. 56(c) ..................................................................................................5

# I.   **INTRODUCTION.**

This Court should deny Plaintiff Clean Air Engineering-Maritime, Inc.'s ("CAEMI") Motion for Summary Judgment regarding the two Patents-in-Suit, U.S. Patent No. 7,258,710 (the '710 Patent) and No. 8,327,631 (the '631 Patent). CAEMI has not demonstrated as a matter of law that it does not infringe the two Patents-in-Suit or that the '710 Patent is invalid by clear and convincing evidence.

With respect to CAEMI's argument of non-infringement, this Court previously determined that Defendant Advanced Cleanup Technologies, Inc. ("ACTI") has "shown a substantial likelihood of proving infringement" of method Claim 19 of the '710 Patent.   (Dkt. 79, p.5.)   Indeed, subsequent deposition testimony of CAEMI's primary technical witness corroborates that CAEMI's Accused Products perform the step of "securing a bonnet over a stack." Nevertheless, in moving for summary judgment of non-infringement of Claim 19, CAEMI recycles the same evidence and legal arguments that the Court previously rejected.   The Court should again reject those arguments.

With respect to the '631 Patent, genuine disputes of material facts exist that preclude summary judgment.

With respect to CAEMI's argument of invalidity, CAEMI cannot demonstrate that every limitation of Claim 19 of the '710 Patent is present in Teboul.   Among other things, the Teboul reference, essentially a form of catalytic converter designed for a car, does not disclose as a matter of law the process of "*securing* a bonnet over a stack."   Accordingly, summary judgment of invalidity based on anticipation is precluded.

# II.   **RELEVANT BACKGROUND FACTS.**

## A.   **The '710 Patent.**

The '710 Patent is entitled "Maritime Emissions Control System" and concerns the process of deploying an emissions capture and control device, securing the emissions capture device over an exhaust port such that it remains in

-1-

place over the exhaust port to capture exhaust, and then treats the exhaust resulting in the reduction of emissions of an Ocean Going Vessel ("OGV").   This is disclosed as an Advanced Maritime Emissions Control System ("AMECS"). Declaration of John Powell in Support of Opposition to Motion for Summary Judgment ("Powell Decl."), ¶ 2.  An OGV is a very large, commercial grade ship capable of emitting tremendous amounts of pollutants into the environment. Container vessels are an example of OGVs. *Id.* at ¶ 3.

As disclosed in the background of the '710 Patent, the invention is intended to be applied to an OGV, particularly while it may be subject to wave action. Powell Decl., ¶ 6.  One of the problems that the '710 Patent was intended to solve was the difficult task of aligning an Exhaust Intake Bonnet ("Bonnet'), or capture device, over the stack of the OGV, particularly while the OGV was in motion.  *Id.* at ¶ 7.  This task is particularly challenging because one embodiment of the AMECS was for it to be mounted on a separate, independently moving vessel, such as an Unpowered Seagoing Barge ("USB"). *Id.*  The problem solved by the '710 patent is even more challenging as there are actually three independent moving objects: the USB, the Bonnet, and the OGV.

Accordingly, a critical aspect of the '710 Patent was the method of securing one moving object (Bonnet) over another moving object (the stack of the OGV) such that the exhaust could be captured, and then engaging in station keeping so that the process can continue without interruption.  *Id.* at ¶ 8.  In the nautical context, station keeping is the process of maintaining a waterborne vessel in a stable position relative to another vessel.  *Id.*  In the context of the '710 Patent, station keeping would entail maintaining the position of the Bonnet relative to the stack of the OGV.  *Id.*  That is part of the process of securing the bonnet over the stack. *Id.*

Figure 2A of the '710 Patent, depicted below, illustrates an embodiment of the claimed invention and shows an AMECS mounted on a USB.  Figure 2A

-2-

1  shows a bonnet, positioned over a ship stack, which acts to capture the exhaust
2  from the stack and carry it to the duct, which then carries the exhaust to the
3  emissions control unit (not shown).



15  **B.    The '631 Patent.**

16      The '631 Patent is directed to the processing of exhaust emissions and
17  discloses an emissions control unit.   Although the '631 Patent refers to the
18  disclosure of the AMECS and emissions control unit of the '710 Patent, the
19  claimed invention of the '631 Patent describes an emissions control unit that
20  processes exhaust with improved efficiency, efficacy and energy savings over the
21  prior art.  In particular, the asserted independent claims specify details of a system
22  and method of cleaning exhaust emissions from an Ocean Going Vessel, which
23  includes processes for removing $SO_2$, $NO_x$, and particulate matter.

24      **C.    CAEMI's Accused Products.**

25      CAEMI has developed an exhaust retrieval system which it calls Maritime
26  Emissions Treatment System ("METS").  Specifically, similar to ACTI's AMECS,
27  METS consists of a barge-mount crane and connected treatment system.
28  Declaration of Eugene L. Hahm in Support of ACTI's Opposition to Motion for

-3-

1   Summary Judgment ("Hahm Decl."), Exh A (Excerpts from Deposition of Larry
2   Reeves, March 14, 2014 ("Reeves I Dep.")) at 32:17-24. The METS components
3   include a "barge, treatment system, generator system, man lift, crane, duct hose,
4   catch, and a hood [i.e., a bonnet]." Reeves I Dep., 53: 13-19.

5      In its motion, CAEMI provides photographs of its three different bonnets:
6   the Safe Connect, the Straight Hose, and the Ultra Safe Connect. Motion, p. 6: 14-
7   20. CAEMI asserts that the Straight Hose bonnet and the Ultra Safe Connect
8   bonnet are substantially the same in shape and function. Motion, p. 8:4-5.

9      The Ultra Safe Connect bonnet, however, includes additional functional
10  elements that were not present in the Straight Hose bonnet. Set forth below are
11  two photographs of the Ultra Safe Connect bonnet that CAEMI currently uses.
12  Hahm Decl., Exh B (Excerpts and exhibits from Deposition of Larry Reeves, May
13  15, 2014 ("Reeves II Dep.")), Exh. 52 and 58.

14

15

16

17

18

19

20

21

22

23     The Ultra Safe Connect bonnet includes the following new features:

24     Handlebar:

25

26

27

28



Chain falls:

### III.   APPLICABLE LEGAL STANDARD.

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When evaluating a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant and draw all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986).

#### A.   Infringement.

"Infringement occurs when a properly construed claim reads on the accused product." *Monsanto Co. v. Scruggs,* 459 F.3d 1328, 1334 (Fed. Cir. 2006). A motion for summary judgment of non-infringement must be denied when the patentee presents sufficient evidence that raises a fact issue on whether the accused product infringes the claim. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1379 (Fed. Cir. 2004). However, if "there are no genuine factual disputes about the characteristics of an accused product, and the claim construction shows that the accused product meets every limitation of the asserted claim summary judgment finding literal infringement is proper." *Quality Edge,*

1  *Inc. v. Rollex Corp.*, 2013 WL 3283639 at \*5 (W.D. Mich. 2013)(internal citations

2  omitted).

3        **B.    Anticipation.**

4        In a patent infringement case, the accused infringer bears the burden of

5  proving invalidity of an asserted patent by clear and convincing evidence. *Central*

6  *Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C, 482* F.3d

7  1347, 1357-58 (Fed. Cir. 2007).  This standard of proof also applies on summary

8  judgment. *National Presto Indus. v. W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir.

9  1996).  To prove invalidity by anticipation, the patent challenger must show that

10  "the four corners of a single, prior art document describes every element of the

11  claimed invention." *Xerox Corp. v. 3COM Corp.*, 458 F.3d 1310, 1322 (Fed. Cir.

12  2006) (vacating district court grant of summary judgment of invalidity for

13  anticipation) (citation omitted).  "Absence [from a prior art reference] of any

14  claimed element negates anticipation." *Minn. Mining & Mfg. Co. v. Johnson &*

15  *Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1572 (Fed. Cir. 1992).

16  **IV.   CAEMI CANNOT DEMONSTRATE NON-INFRINGEMENT OF THE '710**

17        **PATENT AS A MATTER OF LAW.**

18        To defeat CAEMI's motion for summary judgment of non-infringement of

19  the '710 Patent, ACTI need only show that one of its claims is infringed or that

20  there are genuine disputed issues of material fact regarding CAEMI's

21  infringement.   For purposes of this Opposition, ACTI discusses CAEMI's

22  infringement of independent Claims 1 and 19.

23        Claims 1 and 19 as they appear in the '710 Patent are set forth below:

24                1. An advanced maritime emissions control system comprising:
                a bonnet configured for residing over a ship stack for capturing
25              exhaust from the ship stack, the bonnet contractable around the
                ship stack to sufficiently grasp the ship stack to hold the bonnet
26              in place over the ship stack;
                an emissions control unit for processing the exhaust from the
27              stack; and
                a duct for carrying the exhaust from the bonnet to the emissions
28              control unit.

-6-

19. A method for emissions control, the method comprising:
securing a bonnet over a stack of an Ocean Going Vessel (OGV) to capture exhaust;
drawing the exhaust captured by the bonnet through a duct to an emissions control unit; and
processing the exhaust by the emissions control unit.

ACTI first discusses Claim 19 and then CAEMI's infringement of Claim 1.

## A.   CAEMI's Straight Hose Bonnet and Ultra Safe Connect Bonnet Both Infringe Claim 19.

### 1.   This Court Previously Rejected CAEMI's Arguments of Non-Infringement and Should Adopt the Same Reasoning on this Motion.

On February 25, 2014, ACTI filed an application for a temporary restraining order. (Dkt. 73.)   In opposing the TRO, CAEMI argued that ACTI could not demonstrate a probability of success on the merits because there was no infringement of Claim 19: "[The] Straight Hose Design does not contact the ship stack or otherwise fasten over the ship stack.   Reeves Dec.¶10.   The inverted funnel design does not 'secure' itself to the ship since it simply hangs over the ship stack without contact or other manner of securement."   (Dkt. 75, p. 13:14-17.) Notably, subsequent discovery revealed that CAEMI's representations about "no contact" between its Straight Hose bonnet and the ship stack were misleading.   At his first deposition on March 15, 2014, CAEMI's technical witness, Larry Reeves, acknowledged that his prior declaration on that point had been inaccurate:



1  ███████████.

2      But even without the benefit of Mr. Reeves's corrected deposition

3  testimony, the Court nevertheless determined that ACTI had shown a likelihood of

4  proving infringement on the merits with respect to Claim 19:

5

6          As to method claim 19, which does not require that the bonnet be
           contractible around the stack, [CAEMI] argues that it does not
7          perform the step of 'securing a bonnet over a stack.' Opp'n, Dkt. 75
           at 11-13.  [CAEMI's] argument relies on claim interpretations that
8          were either rejected in the Court's Claim Construction Order, Dkt. 65,
           or not raised in that context, and thus waived.  Therefore, [ACTI] has
9          shown  a  likelihood  of  success  in  proving  infringement,
10         notwithstanding that it has not shown that [CAEMI] presently
           operates the complete system. *See Paper Converting Mach. Co. v.*
11         *Magna-Graphics Corp.*,745 F.2d 11, 20 (Fed. Cir. 1984) (finding
12         infringement where 'significant, unpatented assemblies of elements
           [were] tested during the patent term, enabling the infringer to deliver
13         the patented combination in parts to the buyer, without testing the
14         entire combination together as was the infringer's usual practice.').
15     (Dkt. 79, p.5.)

16      In its summary judgment motion, CAEMI makes the same arguments that it

17  asserted in its TRO Opposition.[1]  Consequently, for the same reason that the Court

18  previously determined that ACTI had "shown a likelihood of success in proving

19  infringement," CAEMI has not demonstrated non-infringement as a matter of law.

20          **2.   CAEMI Performs the Step of "Securing a Bonnet Over a Stack."**

21      CAEMI asserts that its Accused Products do not infringe Claim 19 because

22  neither the Straight Hose bonnet nor the Ultra Safe Connect bonnet is "secured"

23  and that there is no "securement."  Motion, p.19:23-26.   But Claim 19 does not

24  mention the terms "secure" or "securement."   In fact, continuous physical

25  "securement" would be inconsistent with the nature of the problem or the goal of

26  the invention, which is intended to accommodate motion between the USB and

27  ─────────────────────
[1] The Ultra Safe Connect bonnet had not yet been in operation at the time ACTI filed its application for a TRO.
28  CAEMI first tested the Ultra Safe Connect bonnet on April 8, 2014.  Reeves II Dep., 211:23-212:17.  As noted
    above, however, CAEMI acknowledges that its Ultra Safe Connect bonnet performs substantially the same function
    as its Straight Hose bonnet.

-8-

1  OGV of up to five feet (both vertically and horizontally) without placing too great

2  a stress on the stack.  '710 Patent at 1:57-62.

3  Rather, the limitation of Claim 19 is "securing a bonnet over a stack," which

4  is the dynamic process of securing one moving object (the Bonnet), which is

5  attached to another moving object (the USB), over yet another moving object (the

6  ship stack of the OGV), so that the ship's exhaust can be captured.  Figures 3A-3C

7  of the '710 Patent shown below depict the "process" of securing the bonnet over

8  the ship stack.



FIG. 3A          FIG. 3B          FIG. 3C

22  This process of "securing" is also described in the specification of the '710

23  Patent.  '710 Patent at 4:54-61.

1
2
3
4
5
6
7
8
9
10



11  And because the Ultra Safe Connect bonnet is intended to overlap with the
12  ship stack, the motion of the bonnet is purposefully constrained by the presence of
13  the stack itself.  As Mr. Reeves recently testified, the purpose of positioning the
14  stack inside the bonnet was to ensure that the bonnet remains over the stack:

15
16
17
18
19
20



21
22  Maintaining the bonnet over the ship stack is the problem that the '710
23  Patent was intended to solve.  If the bonnet's position relative to the stack is lost
24  such that exhaust is not captured, then the problem has not been solved.  CAEMI
    performs the step of "securing the bonnet over the stack" of Claim 19.
25

26  **B.  There are Material Disputed Facts Regarding CAEMI's
           Infringement of Claim 1.**
27

28

-10-

### 1.  Both the Straight Hose Bonnet and Ultra Safe Connect Bonnet are Radially Contractable and Sufficiently Grasp the Ship Stack.

CAEMI claims that its Ultra Safe Connect bonnet does not meet the limitations as required of the bonnet in Claim 1 of the '710 patent because the inverted funnel (1) is not contractable around the ship stack and (2) does not sufficiently grasp the ship stack to hold the bonnet in place.

However, each of these claim elements is met if the inverted funnel overlaps the stack and is placed onto the stack such that there is regular contact between the interior of the inverted funnel and the outside edge of the ship stack.  An illustration of such infringing usage is shown in the Figure 1 below:



inverted funnel of CAEMI's Straight Hose and Ultra Safe Connect

ship stack

Figure 1

As shown above, when the top of the stack encounters the radially contracting interior of the inverted funnel, its movement is increasingly restricted such that the stack is sufficiently grasped to continually secure the bonnet over the stack.  By its very nature, the inverted funnel bonnet includes a "radially contractible" design – penetration of the bonnet by the stack causes the stack to encounter the ever-contracting interior of the bonnet, which serves to initially guide the bonnet over the stack and then maintain that position.

The contractable nature of the Ultra Safe Connect bonnet was demonstrated during Test 5, conducted on April 8, 2014.  Although Mr. Reeves has declared that the CAEMI's "intent" is to have the stack penetrate its Bonnet by only a few inches, on that occasion ████████████████████████████

-11-



At such close proximity, significant contact between the ship stack and the interior of the Straight Hose bonnet or Ultra Safe Connect bonnet is virtually guaranteed because of the independent movement of the USB and the OGV. Indeed, Mr. Reeves acknowledged that during Test 4 conducted in May 2013, there was such contact because of numerous variables:



As noted above, the specification of the '710 Patent expressly contemplates significant vertical and horizontal movement between the USB (and therefore its Bonnet) and the OGV. In light of this expected movement, the design and operation of CAEMI's Straight Hose and Ultra Safe Connect Bonnets are both contractable and capable of sufficiently grasping the stack of an OGV.

### 2. The Safe Connect Bonnet Infringed Claim 1 during Tests 2 and 3.

CAEMI does not argue that its original Safe Connect bonnet is not contractable or did not sufficiently grasp the ship stack. Rather, CAEMI asserts that its use of the Safe Connect bonnet did not infringe Claim 1 because CAEMI did not perform other steps of Claim 1 – capturing exhaust over a ship stack or being attached to an emissions control unit – during its tests of the Safe Connect bonnet. Motion, p. 15:9-19. But as noted in the Court's TRO order, CAEMI could still be liable for infringement even if did not operate its complete system during Test 2 and Test 3. *See Paper Converting Mach. Co. v. Magna-Graphics Corp.*,745 F.2d 11, 20 (Fed. Cir. 1984) (finding infringement where 'significant, unpatented assemblies of elements [were] tested during the patent term, enabling the infringer to deliver the patented combination in parts to the buyer, without testing the entire combination together as was the infringer's usual practice.')"

Although the Court declined to issue any temporary restraining order, CAEMI's prior tests of its Safe Connect bonnet during Test 2 and Test 3 qualify as an infringing use.

## V. THERE ARE GENUINE DISPUTES OF MATERIAL FACT REGARDING CAEMI'S INFRINGEMENT OF THE '631 PATENT.

CAEMI's argument that it does not infringe the '631 patent relies on ACTI's infringement contentions from June 4, 2013, served nearly one year ago. These disclosures were based on information then available to ACTI, without the benefit of significant discovery. ACTI's early infringement contentions were prepared without the benefit of CAEMI's complete production of documents, last served on

-13-

1    April 28, 2014, and were served well prior to the deposition of Rod Gravely,

2    CAEMI's technical consultant on the Tri-Mer emissions control unit, on May 2,

3    2014.  Genuine disputed issues of fact exist regarding CAEMI's arguments of non-

4    infringement of the '631 Patent.

5         First, CAEMI argues that "[t]here's no evidence at all that the temperature is

6    reduced in the UltraCat Filter at this stage and therefore there is no infringement of

7    claim 1 or 6."  Motion, p. 21:26-22:2.





;

25        Second, CAEMI argues that ACTI presents only attorney argument to show

26   how CAEMI's UltraCat filter "**generates[s] a first processed flow with reduced**

27   **Particulate Matter (PM)** and reduced Sulfer [sic] Dioxide ($SO_2$)."  Motion, p.

28   22:7-8 (emphasis in original).  As detailed below, CAEMI's document production

-14-

1   on April 28, 2014, and testimony from Mr. Gravely's deposition refute its
2   argument that ACTI's allegations are based solely on attorney argument.



16       Additionally,

27       Third, CAEMI argues that Claim 1 requires a "processed flow **with reduced**
28  **NOx**." Motion, p. 22:24 (emphasis in original).  CAEMI further states that Mr.

1  Gravely testified that no tests performed to date (through the date of the deposition

2  on May 2, 2014) had resulted in "reduced NOx since the ammonia delivery system

3  (necessary for removing NOx) had not been installed." *Id.* at p.22:25-27.  CAEMI,

4  however, expressly acknowledges that it performed a test "on May 13, 2014 on the

5  Ship MOL Maneuver where ship exhaust was treated **and NOx was removed**

6  **during treatment**" (emphasis added).  Motion, p. 10: 21-23. ████████████████

7  ████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████

9  ████████████████████████     Additionally, as noted by the Court, and discussed above, CAEMI

10  could still be liable for infringement even if it did not operate its complete system.

11  *See Paper Converting Mach. Co.*, 745 F.2d at 20.

12  **VI.   TEBOUL DOES NOT ANTICIPATE CLAIM 19 OF THE '710 PATENT.**

13      U.S. Patent No.   6,185,934 to Teboul ("Teboul") discloses a catalytic

14  converter device that is <u>permanently</u> mounted to a vehicle for filtering the exhaust

15  gases of that motor vehicle.  CAEMI relies <u>only</u> on this device described for usage

16  on "any motor vehicle" to contend that Teboul anticipates Claim 19 of the '710

17  Patent.  But critically, Teboul does not disclose a key limitation of Claim 19,[2]

18  namely: "securing a bonnet over a stack of an Ocean Going Vessel (OGV) to

19  capture exhaust."

20      **A.  Teboul does not anticipate "<u>securing</u> a bonnet over a stack."**

21      The limitation of Claim 19 of "securing a bonnet over a stack" requires more

22  than the condition of a conical nozzle being connected an exhaust pipe of a motor

23  vehicle.  While there may be superficial similarities in the overall appearance

24  between the '710 Patent and Teboul, there is not the necessary identity of structure,

25  purpose and result which is required for anticipation under 35 U.S.C. § 102.

26  *Straussler v. United States*, 339 F.2d 670, 168 Ct.Cl. 852 (1964).

27  _____

28  [2] ACTI does not concede that the other limitations of Claim 19 are disclosed by
the Teboul patent, but focuses for purposes of summary judgment on the arguments
contained herein.

As noted above, the limitation "securing a bonnet over a stack" is a process of securing one moving object over another moving object, requiring a tolerance for motion between the OGV and the USB, which houses the emissions control unit.   The claim limitation requires that these tolerances be accounted for, but they are completely ignored by Teboul, as Teboul only discloses a device which is permanently attached to a vehicle.

The specification of the '710 Patent provides guidance for practicing this step of the invention through embodiments:

> Thus attached, the assembly is able to sustain movement between of the USB relative to the OGV of approximately five vertical feet and approximately five horizontal feet, without adversely affecting the attachment of the EIB or placing too great a stress on the stack.

'710 Patent, 1:57-62; and,

> …providing sufficient freedom of movement to allow for some relative motion between the USB 12 and the OGV 24. Preferably, approximately five feet of lateral and vertical movement is provided.

*Id.* 4:38-41.

This careful positioning of the bonnet over the stack to adequately account for relevant variables and required movement tolerances between the two is not described in Teboul and is not performed when using the device of Teboul.  Nor is the device in Teboul inherently capable of accounting for the relative motion between two moving objects.  Rather, Teboul simply discloses the following:

> A line **13** for supplying exhaust gasses and ambient cool or cooling air is connected, by one of its ends, to the inlet **11**. The other end of the supply line **13** is provided with an opening whose inlet orifice allows the penetration into the supply line of exhaust gasses coming from an internal combustion engine as well as the flow of ambient cooling air.

> In this case, this opening consists of a conical nozzle **14** receiving the outlet orifice of an exhaust silencer box **15** of a motor vehicle **2**, as illustrated in FIG. **2**.

-17-

Teboul, 3:21-30.

Moreover, the filtering device of Teboul is affixed to the motor vehicle (by mounting to the "boot"/trunk or engine compartment), and fails to consider any relative motion between the filter and vehicle:

> Furthermore, the filtering device can be installed in the boot or in the engine compartment of the vehicle.

*Id.* 3:3-4; and,

> As shown in FIG. 2, the filtering device **1** is installed in the boot of the motor vehicle **2** using assembly means which are not shown.

*Id.* 4:65-67.

As discussed herein, the '710 Patent is intended to be applied to a large, commercial grade ship and to treat emissions from the ship while solving the difficult task of aligning a moving bonnet attached to a moving USB over the stack of a moving OGV.   Powell Decl., ¶¶ 4, 6-7.   Teboul takes none of this into consideration, nor is the invention of Teboul capable of doing so.   Teboul fails to disclose the step of "securing a bonnet over a stack" and does not anticipate Claim 19 of the '710 Patent.

Likewise, CAEMI's technical expert, Dr. Marko Princevac, ignores the novel structure and function of the '710 Patent, whereby the claim limitation "securing a bonnet over a stack" requires consideration of the process of securing one moving object over another moving object requiring a tolerance for motion. Using Teboul as a template, Dr. Princevac rescaled the prior art and underlined inverted Figure 1 of Teboul to emulate a bonnet and stack to purportedly demonstrate how "a bonnet is secured over the stack."   Declaration of Marko Princevac in Support of Motion for Summary Judgment (Dkt. 97-3), ¶38.   This exercise of hindsight is not anticipation.   The law of anticipation requires that the same invention, with all the limitations of the claims, existed in the prior art. *See Richardson v. Suzuki*

-18-

1   *Motor Co.*, 868 F.2d 1226, 1236 (Fed.Cir.1989) ("anticipation" requires that the

2   identical invention is described in a single prior art reference).  A prior art device

3   cannot be altered, as done here by Dr. Princevac, and then found to anticipate a

4   different invention in whose image it was recreated. *Id.* at 1236, (every element of

5   the claim must be shown in the reference, including all limitations); *In re Paulsen*,

6   30 F.3d 1475 (Fed. Cir. 1994) (the reference must describe the claimed invention

7   sufficiently to place it in the possession of a person of ordinary skill in the field).

8       Moreover, Dr. Princevac equates the phrase "securing a bonnet over a stack"

9   of Claim 19 of the '710 Patent with "connected to" in Teboul.  Dr. Princevac

10   states:

11

12       Teboul discloses that conical nozzle 14 (i.e. the "bonnet") may be
       **connected** either **to** the outlet the outlet of exhaust silencer box 15
13       (i.e. the tailpipe on a muffler) or directly to the engine exhaust
       manifold.

14

15 Princevac Decl., ¶35 (emphasis added); and

16       In Teboul, the bonnet is "connected" to the stack.  For example:  The
       supply line can be **connected to** the outlet of the exhaust silencer box
17       or directly to the outlet of the exhaust manifold of the internal
18       combustion engine and comprises means adapted to receive the
       corresponding outlet.  Teboul, 2:66-3:2.

19

20 Princevac Decl., ¶36. (emphasis added).

21       This Court rejected this argument made by CAEMI in its Claim

22 Construction Order, Dkt. 65, regarding the phrase "securing a bonnet over a stack."

23 The Court held:

24

25       Defendants argue that Plaintiff's construction substitutes the word "to" for
       "over," and that there was "no intention to disclaim the term 'over'." Defs.'
26       Reply Br., Dkt. 61 at 6-7 (citing Mar. 15, 2006 Amend. at 12 ("The hood 3
27       of Koclejda is held in place by the duct frame 24 (see FIGS. 5A and 5B of
       Koclejda,) not by **attaching over an OGV stack**, or any other stack.")
28       (emphasis added)).

-19-

Defendants' position that there is no reason to replace "over" with "to" is persuasive. These terms are similar, but are not identical. Attaching one object "to" another can be achieved in any spatial relationship, but attaching an object "over" another requires a specific spatial relationship between the objects.

Claim Construction Order, Dkt. 65, p. 12.

Here, Dr. Princevac disregards the Court's claim construction of the phrase "securing a bonnet over a stack" and its explanation regarding the replacement of "over" with "to." In addition, Dr. Princevac inverts Fig. 1 of Teboul in an effort to persuade the Court that the conical nozzle is "over" the exhaust pipe, when in actuality, Teboul discloses that the nozzle is connected "to" exhaust pipe.

**B. Teboul describes the genus "any motor vehicle" that does not anticipate the species "Ocean Going Vessel" of the '710 Patent.**

The courts have established that the disclosure of a genus in the prior art is not necessarily a disclosure of every species that is a member of that genus. *See, e.g., In re Baird,* 16 F.3d 380, 382 (Fed.Cir.1994); *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991 (Fed. Cir. 2006). In the instant case, the term "Ocean Going Vessel (OGV)" of the '710 Patent is a species within the genus of "boats" and "any motor vehicle" as disclosed and contemplated in Teboul. Here, it is clear that the disclosure of the large genus "any motor vehicle whatsoever" by Teboul (Teboul at 5:17) does not anticipate the claimed species "Ocean Going Vessel" as described in the '710 Patent and understood by those of ordinary skill in the art.

The term "Ocean Going Vessel (OGV)" was not a term proposed for construction by either of the parties and was not construed by the Court. As such, the claim term "Ocean Going Vessel (OGV)" should be given its "broadest reasonable interpretation consistent with the specification." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005).

The plain meaning of a term means the ordinary and customary meaning given to the term by those of ordinary skill in the art at the time of the invention.

-20-

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). The ordinary and customary meaning of a term may be evidenced by a variety of sources, including the words of the claims themselves, the specification, drawings, and prior art. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646, (Fed. Cir. 1994).

The '710 Patent specification describes an "Ocean Going Vessel" as follows:

> The present invention relates to the reduction of emissions from Ocean Going Vessels (OGVs), and more particularly to a system for capturing and processing emissions from OGVs in the vicinity of a port.

'710 Patent, 1: 5-8;

> An OGV may create and exhaust as much $NO_x$ as 12,500 automobiles or as an oil refinery, and thus is a substantial health risk to port workers and residents of surrounding communities, and may physically damage structures and equipment.

'710 Patent, 1: 18-22.

The invention was intended to be applied to an OGV or a large, commercial grade ship. Powell Decl., ¶¶4, 6. This definition of OGV conforms with the California Air Resources Board ("CARB") definition of OGV. *Id.* at ¶¶ 4-5. As set forth in Section 93118.3 of the California Code of Regulations, in relevant part:

> "Ocean-Going Vessel" means a commercial, government, or military vessel meeting any one of the following criteria:
>
> (A) A vessel greater than or equal to 400 feet in length overall…
> (B) A vessel greater than or equal to 10,000 gross tons…
> (C) A vessel propelled by a marine compression ignition engine with a per-cylinder displacement of greater than or equal to 30 liters."

The OGV of the '710 Patent describes a very specific type of ocean going

1   vessel, a particular species on a very different scale within the broader genus of

2   "boat," "any motor vehicle," or "any motor vehicle whatsoever" disclosed by

3   Teboul. Teboul, 1: 62-63; 5:17-18.

4          Here, the species "Ocean Going Vessel" encompassed within the genus "any

5   motor vehicle" is not disclosed by a mere disclosure of the genus. *See Atofina v.*

6   *Great Lakes Chem. Corp.*, 441 F.3d 991 (Fed. Cir. 2006). Given the considerable

7   difference between the claimed species in the '710 Patent and the genus of the

8   prior art in Teboul, Teboul fails to describe an Ocean Going Vessel with sufficient

9   specificity to anticipate the limitation of Claim 19.

10  **VII.   <u>CONCLUSION</u>**

11         CAEMI's non-infringement argument lacks merit and is contradicted by the

12  testimony of its own witnesses. Moreover, CAEMI has failed to establish with

13  clear and convincing evidence that the Teboul reference has all of the limitations of

14  Claim 19 of the '710 Patent. Accordingly, ACTI respectfully requests that this

15  Court deny CAEMI's motion for summary judgment.

16

17  Dated: June 2, 2014                    **LEE TRAN & LIANG LLP**

18                                                      */s/ Enoch H. Liang*

19                                                    Enoch H. Liang
                                                       Eugene L. Hahm
20                                                    Edward Quon
                                                       Attorneys for Defendants
21

22

23

24

25

26

27

28