MAYER BROWN LLP
MICHAEL A. MOLANO (SBN 171057)
mmolano@mayerbrown.com
JENNIFER T. LORCH (SBN 267647)
jlorch@mayerbrown.com
JONATHAN A. HELFGOTT (SBN 278969)
jhelfgott@mayerbrown.com
Two Palo Alto Square
Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:   (650) 331-2000
Facsimile:    (650) 331-2060

JOHN NADOLENCO  (SBN 181128)
jnadolenco@mayerbrown.com
RUTH ZADIKANY (SBN 260288)
rzadikany@mayerbrown.com
350 South Grand Avenue
25th Floor
Los Angeles, CA  90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

Attorneys for Plaintiff
CLEAN  AIR  ENGINEERING-MARITIME,
INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CLEAN AIR ENGINEERING-MARITIME, INC., a California corporation,<br><br>                              Plaintiff,<br><br>         v.<br><br>ADVANCED CLEANUP TECHNOLOGIES, INC., and ADVANCED ENVIORNMENTAL GROUP, LLC [sic], a California corporation,<br><br>                              Defendants. | Case No. 2:12-cv-08669-JAK-VBK<br><br>**CLEAN AIR ENGINEERING-MARITIME, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      June 23, 2014<br>Time:     8:30 a.m.<br>Place:     Roybal 750 – 7th Floor<br>Judge:    John A. Kronstadt |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

ARGUMENT......................................................................................................... 1

    A.    Reply To Defendants' Arguments On Claim 1 of the '710 Patent......................................................................................................... 1

        1.    The Alleged Facts In Dispute Are Not Material. ...................... 2

        2.    Defendants' Reliance On *Paper Converting Mach. Co.* To Show Infringement By The Safe Connect Is Misplaced................................................................................. 3

    B.    Reply To Defendants' Arguments On Infringement Of Claim 19 Of The '710 Patent................................................................... 4

        1.    The TRO Order Found Both A Likelihood Of Success On Infringement And Invalidity. .................................... 4

        2.    The Plain Meaning of "Securing" Should Be Applied............... 4

    C.    Reply To Defendants' Arguments On Invalidity Of Claim 19 Of The '710 Patent................................................................... 6

        1.    Teboul Discloses The Step of "Securing A Bonnet Over A Stack."............................................................................. 6

        2.    Teboul Describes An "Ocean Going Vessel."........................... 7

    D.    Reply To Defendants' Arguments On Infringement of The '631 Patent.................................................................................. 8

    E.    Summary Judgment of Non-Infringement Should Be Entered On The Remaining Claims Since Defendants Did Not Oppose Judgment On Those Claims. ........................................... 10

CONCLUSION.................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*de Graffenried v. United States*, 25 Cl. Ct. 209 (1992)..............................................3

*Comark Comms., Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) .................5

*Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972) .............................3

*Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008)........................................................................7

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
   745 F.2d 11 (Fed. Cir. 1984)................................................................2, 3, 4

*Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372 (Fed. Cir. 2000)........................7

*Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364 (Fed. Cir. 2001) ..............3

-ii-

PLAINTIFF'S REPLY IN SUPPORT OF MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT;
CASE NO. 2:12-CV-08669-JAK-VBK

## I.     INTRODUCTION

The remaining issues have been substantially narrowed after Defendants' opposition brief.  CAEMI[1] moved for summary judgment of non-infringement and/or invalidity on 17 claims in two patents.  Defendants provided no written opposition to 8 of those 17 claims entitling CAEMI to a judgment of non-infringement as to those 8 claims (2, 3, 7, 8, 22, 24, 30, 35 of the '710 Patent[2]).  Claims 1 and 19 of the '710 Patent and the 7 asserted claims of the '631 Patent[3] remain at issue.

For claim 1 of the '710 Patent and the asserted claims of the '631 Patent, Defendants conjure up allegedly "disputed facts" to avoid summary judgment.  However, the record demonstrates that those allegedly disputed facts are not material and that non-infringement may properly be entered.

For claim 19, there is a question of law remaining as to the meaning of "securing" in the claimed step of "securing a bonnet over a stack." At Markman, the Court found that this term "does not require construction."  Now at summary judgment, the plain and ordinary meaning for this term is at issue to determine claim 19's validity and infringement.

The parties have proffered competing constructions in these papers.  CAEMI proposes the plain and ordinary meaning as supported by dictionary definitions provided by both parties during the Markman process.  Defendants offer a tortured construction that is different for purposes of infringement than for validity.  Using the plain and ordinary meaning of "securing," claim 19 is both not infringed and invalid over the Teboul reference.  Summary judgment in Plaintiff's favor is therefore respectfully requested on all claims.

## II.    ARGUMENT

### A.     Reply To Defendants' Arguments On Claim 1 of the '710 Patent

---

[1] Plaintiff Clean Air Engineering-Maritime, Inc. ("CAEMI" or "Plaintiff").
[2] U.S. Patent No. 7,258,710 ("'710 Patent").
[3] U.S. Patent No. 8,327,631 ("631 Patent").

Defendants make two arguments to avoid summary judgment of non-infringement of claim 1 by the CAEMI Products.[4]  First, Defendants argue that there are material facts in dispute with regard to the Straight Hose Design and the Ultra Safe Connect (collectively "Inverted Funnels").  Opp. at 11-13.  Second, Defendants argue that the Safe Connect did, in fact, infringe claim 1 during Tests 2 and 3 based on the holding in *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 20 (Fed. Cir.1984).  Opp. at 13.  Neither argument defeats summary judgment on claim 1.

### 1.    The Alleged Facts In Dispute Are Not Material.

Defendants first attempt to create material facts in dispute by pointing to the testimony of Mr. Reeves that (1) there may be "penetrat[ion] [by the stack] halfway into the length of the Ultra Safe Connect;" (2) "the diameter of the Ultra Safe Connect was just barely larger than the diameter of the top of the stack;" and (3) there may be "contact" between the Inverted Funnels and the stack.  Opp. at 11-12.  These facts, Defendants argue, are material to whether these two products are "[1] contractable around the ship stack [2] to sufficiently grasp the ship stack…."  '710 Patent, claim 1.  Opp. at 11.

The Court construed "contractable around the ship stack" to mean "capable of being contracted around the ship stack." Dkt. 65 at 13-14.  In applying that construction to the Straight Hose Design, the Court found that the inverted funnel of the Straight Hose Design is not "contractible about the ship stack."  Dkt. 79 at 4.  It is this inverted conical shape of solid steel that the Court previously found is not "contractible about a ship stack" and that shape has **not changed**. *Id*.; Dkt. 97-1 at 8 ("the Ultra Safe Connect is substantially the same in shape (conical design) and function (capturing exhaust) as the Straight Hose Design.").

Defendants now take the tenuous position that the Inverted Funnels are

---

[4] Safe Connect, Straight Hose Design and Ultra Safe Connect ("CAEMI Products").

somehow "capable of being contracted" even though the solid steel inverted funnel does not change or move at all in shape or size.  Given that these "disputed facts" do not relate to the bonnet being "contactable," those facts are simply not material.  There are therefore no issues of material fact and Court may enter judgment of non-infringement of claim 1 by the Inverted Funnels.

### 2.   Defendants' Reliance On *Paper Converting Mach. Co.* To Show Infringement By The Safe Connect Is Misplaced.

Defendants do not dispute that CAEMI never practiced every element of claim 1 in a single test.  Opp. at 13.  Instead, they rely on *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984) to argue that CAEMI may still be liable for infringement even though every element of claim 1 was not met by the CAEMI system.  This reliance is misplaced.

*Paper Converting* involved a "narrow exception to th[e] general rule" that a patent is not infringed until every element is practiced. *de Graffenried v. United States*, 25 Cl. Ct. 209, 214 (1992).  The exception was designed to frustrate a scheme where, after a finding of infringement, a party assembled every component of an infringed patent, tested the components separately, and sent them overseas with instructions not to assemble the complete device until after the expiration of the patent.  *Paper Converting Machine Co.*, 745 F.2d at 19.  The Federal Circuit elected to enforce the patent after its expiration to frustrate the infringer's attempt at gamesmanship.  *Id.*

Since *Paper Converting*, however, the Federal Circuit has reaffirmed that in the absence of an obvious scheme to avoid technical infringement, "the infringer must use the 'patented invention'" and "'[n]o wrong is done the patentee until the combination is formed.'"  *Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (holding that "[b]ecause [the alleged infringer] tested only components of [the patent] … it did not use the claimed invention and did not infringe") (citing *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 529

-3-

(1972)).  Unlike the defendant in *Paper Converting*, CAEMI's component testing was not done with the purpose of selling a completed infringing product.  CAEMI tested certain components of its maritime emissions system, and then discarded the Safe Connect device without ever conducting a test that even arguably practiced every term of Claim 1 of the '710 Patent with that device.  Accordingly, the Safe Connect did not infringe during Tests 2 and 3 and judgment of non-infringement is appropriate.

### B.  Reply To Defendants' Arguments On Infringement Of Claim 19 Of The '710 Patent

Defendants argue that claim 19 is infringed by the Inverted Funnels based on (1) the TRO Order finding a likelihood of infringement on the Straight Hose Design; and (2) Defendants' newly proffered claim construction for the step of "securing a bonnet over a stack."

### 1.  The TRO Order Found Both A Likelihood Of Success On Infringement And Invalidity.

Defendants first point to the TRO Order's [5] finding of a likelihood of success on infringement as authority for finding infringement now at summary judgment.  Opp. at 8.  However, the TRO Order also found that there was a likelihood of success on CAEMI's position that claim 19 was **invalid** in view of Teboul.  Dkt. 79 at 6.  CAEMI's position is that the Court should revisit the proper construction of the term "securing" at this juncture to determine its meaning and then, based on that meaning, whether claim 19 is infringed or invalid.

### 2.  The Plain Meaning of "Securing" Should Be Applied.

Despite arguing for the plain and ordinary meaning during claim construction, Defendants now proffer a tortured construction for "securing a bonnet over a stack" as "the dynamic process of securing one moving object (the Bonnet), which is attached to another moving object (the USB), over yet another

---

[5] Dkt. 79 ("TRO Order").

-4-

moving object (the ship stack of the OGV), so that the ship's exhaust can be captured." Opp. at 9.

This proposed construction is problematic for obvious reasons. First, its circular in that "securing" means "the dynamic process of securing…." Second, "dynamic" is nowhere in the '710 Patent. Third, the remainder of the definition is attempting to replace the phrase "a bonnet over a stack' with "one moving object (the Bonnet), which is attached to another moving object (the USB), over yet another moving object (the ship stack of the OGV)." This is impermissible addition of embodiments from the specification into the claim language. *Comark Comms., Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)("[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims").

CAEMI's proposed construction for "securing" is based on its plain and ordinary meaning that the parties exchanged during the claim construction process. CAEMI proposed the following dictionary definition for "securing": "12. to make firm or fast, as by attaching: *to secure a rope.* " Dkt. 55 at 5-6 (Webster's Encyclopedic Unabridged Dictionary of the English Language (p. 1290)); Molano Reply Decl.[6], Ex. 1. This is consistent with Defendant's proposed dictionary definition during claim construction of "2. to attach or fasten firmly." Dkt. 55 at 5-6 (Oxford Advanced American Dictionary). While the Court held in its Markman Order that "'[s]ecuring' and 'attaching' do not have the same meaning," these definitions allow "attaching" to be an example of "securing" but not the same as "securing." In other words, "securing" means "to make firm or fast, including attaching."

In view of these definitions, the Inverted Funnels are not held "firmly" or

---

[6] Declaration of Michael A. Molano In Support of Clean Air Engineering-Maritime, Inc.'s Reply Memorandum Of Points And Authorities In Support Of Motion For Summary Judgment ("Molano Reply Decl.").

"fastened" to the ship stack due to movement. There is no dispute that the Inverted Funnels, intended to be about 3 inches around the ship stack, move due to wind and ship movement. Dkt. 97-1 at 17-18 ("However, due to wind and some ship movement on water, the Ultra Safe Connect "rattles" around the stack coming in contact with the stack like a "BB in a box car.") Defendants do not dispute this movement. Accordingly, the Inverted Funnels are not "securing…over a stack" and summary judgment of non-infringement should respectfully be entered.

### C. Reply To Defendants' Arguments On Invalidity Of Claim 19 Of The '710 Patent

Defendants argue that Teboul does not anticipate claim 19 on two grounds. First, Defendants contend that Teboul does not disclose "securing" as claimed. Second, Defendants argue that Teboul does not disclose an "Ocean Going Vessel." Notably, Defendants provide no opposition to a finding that the other elements of claim 19 are found in Teboul (footnote 2 of the opposition notwithstanding).

#### 1. Teboul Discloses The Step of "Securing A Bonnet Over A Stack."

Defendants again take a strained construction of "securing" to distinguish the teaching of Teboul. Defendants construe "securing a bonnet over a stack" differently in their opposition for infringement and invalidity. For invalidity, Defendants propose "a process of securing one moving object over another moving object, requiring a tolerance for motion between the OGV and the USB, which houses the emissions control unit." Opp. at 17. This definition has similar flaws to the definition proposed for infringement of claim 19. To reiterate, it's circular (securing is "a process of securing"), and adds limitations from the specification for "a bonnet over a stack" that are not in claim 19 (*e.g.*, USB and moving object). In addition, Defendants have now added the word "tolerance" to the definition, a word found nowhere in claim 19.

CAEMI again proposes that the same plain and ordinary meaning of

-6-

"securing" be used as discussed above for purposes of infringement and invalidity. That is, "securing" means "to make firm or fast, including attaching." In CAEMI's opening brief, the configuration between the conical nozzle 14 (and supply line 13) to the outlet orifice was shown and is undisputed. Dkt. 97-1 at 24. The conical nozzle ("bonnet") is held firmly in place over the outlet orifice ("stack"). *Id.* It therefore meets the limitation of "securing a bonnet over stack" in claim 19. For these reasons, summary judgment of invalidity of claim 19 should respectfully be entered.[7]

### 2.    Teboul Describes An "Ocean Going Vessel."

Defendants next argue that an Ocean Going Vessel (OGV) is somehow different than the "boat" disclosed in Teboul. Opp. at 20-22. Curiously, the point heading is framed as a distinction between "any motor vehicle" and an OGV, when Teboul discloses a "boat" (5:17-18) that should be the proper comparison to the OGV. Defendants go to great lengths to manufacture an argument that a person of ordinary skill viewing the "boat" disclosed in Teboul would not consider that disclosure to be the same as the OGV of the '710 Patent. None are persuasive.

First, Defendants proffer the self-serving testimony of its inventor John Powell on the "intent" of the invention and the meaning of "securing the bonnet over a stack." Opp. at 18 ("the '710 Patent is intended to be applied to a large, commercial grade ship … while solving the difficult task of aligning a moving bonnet attached to a moving USB over the stack of a moving OGV"); 21 (noting that the '710 Patent was "intended to be applied to an OGV or a large, commercial grade ship"). Both Defendants' argument and Mr. Powell's testimony are irrelevant as a matter of law. According to the Federal Circuit, "what the patentee

---

[7] Defendants also argue that since Dr. Princevac "inverted" Teboul's Figure 1 to show how it corresponds to the '710 Patent, there is no anticipation. Even if the direction of the tailpipe mattered, Teboul recites multiple orientations. Teboul 3:52-56. In any of these orientations, the nozzle is "over" the exhaust pipe. The pipe extends into the nozzle, which surrounds it. Even if "over" is restricted to requiring a portion of the nozzle to be vertically above the pipe, Teboul discloses this concept.

subjectively intended his claims to mean is largely irrelevant to the claims' objective meaning and scope." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000); *see also Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) (holding that inventor testimony is irrelevant in light of the plain language of the patent's claim).[8]

Second, Defendants make a specious genus/species argument between "any motor vehicle" and an OGV. Again, Defendants ignore the proper comparison of the genus of a "boat" (not "any motor vehicle") disclosed to the species of an "OGV." This is simply creative attorney argument to avoid invalidity and should be discarded by the Court. The reliable evidence is the opinion offered by Dr. Princevac, a person of ordinary skill in the art, that a boat is an OGV. Dkt. 97-1 23-24 ("Thus, the vehicle for which Teboul's apparatus may be used can be a boat, a ship, or other ocean going vessel.") For these reasons, a boat anticipates an OGV and claim 19 is anticipated by Teboul.

### D.     Reply To Defendants' Arguments On Infringement of The '631 Patent

For the '631 Patent, the Defendants ignore the claim language that requires specific processing steps to be performed **in a particular location of the system** (either in a first system or a second system) and **in a particular order** (cooling in the first system and then heating in the second system).

As illustrated in annotated Fig. 3 of the '631 Patent below, exhaust (15) comes into a first system (46a). In the first system, the temperature is reduced and PM and $SO_2$ is reduced. That "first processed flow" is then fed into the second system (46b) where the temperature is increased and $NO_x$ is reduced. Claim 1 of the '631 Patent claims these same processing steps in the same order.

---

[8] Curiously, Mr. Powell provides no testimony on whether an OGV is a boat.



The annotated CAEMI system (barge along-side a ship) is depicted below. Gravley Dep., Ex. 31.[9]

From Mr. Gravley's testimony, the exhaust leaves the stack (not shown) at 300 to 600 degrees Fahrenheit and flows through the duct (annotated above). Gravley Dep. 37:15-38:14. Defendants then allege that the temperature remains "cooled" past location B (alleged PM reduction) and C (SO$_2$ reduction) despite the heater at location A. Opp. at 14; Gravley Dep. 37:6-14. ("Although heated, this reduced temperature flow, from 600°F to 450°F is processed.").

The next claimed step is then "heating the first processed flow" in the "second system." '631 Patent, claim 1. Importantly, **the temperature drops from 450°F to 400°F in the "second system" so there is no "heating" from the first**

_____
[9] Citations to Gravley deposition testimony and exhibits attached to the Molano Reply Decl. as Exhibit 2.

1  **system to the second system as claimed.**  Gravley Dep. 42:5-12; 44:20-24 ("Q.

2  You mentioned that the exhaust enters chamber "D" at 450 degrees Fahrenheit and

3  exits the chamber at approximately 400 degrees Fahrenheit; is that correct?  A.

4  Yes, that's correct.")

5         Thus, the evidence pointed to by Defendants does not create a material fact

6  in dispute since, even if true, there is still no infringement of claim 1 or 6 without

7  the "heating" in the "second system" by the UltraCat Filter.  For that reason,

8  summary judgment should be entered for these two independent claims, as well as

9  for claims 4, 12, 13, 16 and 17 that depend from these two claims.

10       **E.     Summary Judgment of Non-Infringement Should Be Entered On
               The Remaining Claims Since Defendants Did Not Oppose
11             Judgment On Those Claims.**

12       The Defendants did not address claims 2, 3, 7, 8, 22, 24, 30 and 35 of the

13  '710 Patent in their Opposition.  Given no opposition, and based on CAEMI's

14  showing that it is entitled to judgment as a matter of law on these claims in its

15  opening brief, CAMEI respectfully requests that summary judgment be entered on

16  these claims.

17  **III.   CONCLUSION**

18       For the foregoing reasons, CAEMI's Motion for Summary Judgment should

19  be granted.

20

21  DATED: June 9, 2014                         Respectfully Submitted,

22                                              MAYER BROWN LLP

23                                              By: /s/ *Michael A. Molano*
24                                              Michael A. Molano

25                                              Attorneys for Plaintiff CLEAN AIR
                                                ENGINEERING-MARITIME, INC.
26

27

28

-10-